**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| BEPS SERVICES, LLC D/B/A<br>BLUE ESCAPES POOL & SPA, | § <br> § <br> § <br> § | Civil Action No._____ |
| Plaintiff, | § <br> § | |
| v. | § <br> § <br> § | |
| BLUE ESCAPE POOLS LLC AND<br>ROGER DAVIS, | § <br> § <br> § <br> § | |
| Defendants. | § <br> § | JURY DEMANDED |

---

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER, AND**
**APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS**

---

Plaintiff BEPS Services, LLC d/b/a Blue Escapes Pool & Spa ("Blue Escapes" or "Plaintiff"), by and through its attorneys, Fox Rothschild LLP, files the following Complaint against Defendants Blue Escape Pools LLC, ("Blue Escape") and Roger Davis, ("Davis") (collectively, "Defendants"), and in support thereof, asserts the following:

**<u>JURISDICTION</u>**

1.      This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

2.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  This is an action for (1) unfair competition under 15 U.S.C. § 1125(a)(1)(A)

(Lanham Act § 43(a)(1)(A); (2) false advertising under 15 U.S.C. § 1125(a)(1)(B) (Lanham Act § 43(a)(1)(B); (3) cybersquatting under 15 U.S.C. § 1125(d) (Lanham Act § 43(d); and (4) related causes of action under the laws of the State of Texas.

3.      As set forth below, the actions listed above arise, *inter alia*, out of Defendants' use in commerce of a mark, words and names in connection with goods and services similar and/or related to those of Plaintiff, and Defendants' registration and use of a domain name containing Plaintiff's mark.

## PARTIES

4.      Plaintiff BEPS Services, LLC d/b/a Blue Escapes Pool & Spa, is a limited liability company organized under the laws of the State of Texas.

5.      Defendant, Blue Escape Pools LLC, is a limited liability company organized under the laws of the State of Texas. Blue Escape has its principal place of business in the State of Texas. Blue Escape may be served with process by serving its registered agent, United States Corporation Agents, Inc., at 9900 Spectrum Dr., Austin, Texas 78717.

6.      Defendant, Roger Davis, is an individual and a citizen of the State of Texas and may be served with process at 190 E. Stacy Rd., Suite 306, Allen, Texas 75002, or wherever he may be found.

7.      Defendants sell, offer, advertise and render the services associated with their products and services on the Internet, which is accessible throughout the world, including in this judicial district and in the State of Texas.

8.      The acts of Defendants giving rise to Plaintiff's claims have been and continue to be committed by Defendants in this judicial district.

## VENUE

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and § 1391(c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred and are occurring in this judicial district, and through their residences and/or actions, all Defendants are subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

10.      Blue Escapes is owned and operated by native Texans, Robert Iovinelli ("Robert") and Willeta Iovinelli ("Willeta") (collectively, "the Iovinellis"). *See* Exhibit "A" (Declaration of Willeta Iovinelli). Based in Plano, Texas, the Iovinellis have more than 43 years' experience servicing, building, renovating and repairing Dallas, Plano, and Frisco area pools (not to mention other parts of the Dallas-Ft. Worth Metroplex). *See* Id. Robert is one of only a few people in the state of Texas who is both a Certified Builder Professional ("CBP") and a Certified Pool and Spa Service Professional ("CSP"). CBP and CSP are two certifications offered by the Pool & Hot Tub Alliance ("PHTA"), for pool service and pool builder professionals. *See* Id. Consequently, Blue Escapes is one of just a handful of pool service companies in the greater Dallas-Fort Worth area that is specially equipped to resolve complex swimming pool problems. *See* Id.

11.      Blue Escapes has been operating under and using the name "Blue Escapes Pool & Spa" in commerce since October 2011.  *See* Id. Blue Escapes has a pending trademark application with the United States Patent and Trademark Office (Serial No. 98017005) for the "Blue Escapes Pool & Spa" service mark. *See* Exhibit "B" (Trademark Application). Blue Escapes maintains a physical address at 1406 Capital Ave., Suite 108, Plano, Texas 75074, and maintains an internet domain at https://blueescapespools.com/ ("Plaintiff's Blue Escapes Domain"). *See* Exhibit "A"

(Declaration of Willeta Iovinelli). This internet domain leads consumers to Blue Escapes' website. *See* Exhibit "C" (Blue Escapes website).

12.     Unbeknownst to Blue Escapes, on or about March 17, 2023, Davis formed a company called Blue Escape Pools LLC as a limited liability company with the Texas Secretary of State, with a physical mailing address at 190 E Stacy Rd. Suite 306, Allen, Texas 75002-8738. *See* Exhibit "D" (Defendant's Texas SOS Filing).

13.     Further unbeknownst to Blue Escapes, and upon information and belief, on or about March 24, 2023, Davis registered an internet domain at https://www.blueescapepool.com/ ("Defendants' Blue Escape Domain") on Wix.com. *See* Exhibit "A" (Declaration of Willeta Iovinelli). This internet domain leads consumers to Defendants' website. *See* Exhibit "E" (Defendants' website).

14.     By way of just one example, on or about March 22, 2023, a customer received an estimate from Davis, numbered EST05887 (the "March Estimate"), in the amount of $17,650.00 for a pool renovation project involving a re-plaster with pebble plaster and a pool modification. *See* Exhibit "F" (March Estimate). *See also* Exhibit "A" (Declaration of Willeta Iovenilli).  The March Estimate contained contact information for "Blue Escape Pools" including a business phone number at 469-494-9323, an internet domain at https://www.blueescapepool.com/ ("Defendants' Blue Escape Domain"), and an e-mail at blueescapepools@gmail.com. *See* Id. Although neither Davis nor Blue Escape are affiliated with Blue Escapes, the March Estimate included Plaintiff's business address at 1406 Capital Ave., Plano, Texas—the same physical address maintained by Blue Escapes for well over a decade. *See* Id.



**Blue Escape Pools**

Roger Davis

Business Number 469-494-9323

1406 Capital ave

Plano, Tx

469-494-9323

blueescapepools.com

blueescapepools@gmail.com

ESTIMATE

EST05887

DATE

03/22/2023

TOTAL

USD $17,650.00

TO

| DESCRIPTION | RATE | QTY | AMOUNT |
|---|---|---|---|
| Pebble plaster<br>Pebble plaster color is customers choice<br>10yr manufacturer warranty<br>Spotter tiles<br>Brush for 3 days<br>Replace main drain covers<br>Replace return eyeballs<br>Clean filter<br>Add start up chemicals | $70.00 | 90 | $6,300.00 |
| Tile<br>Standard tile | $20.00 | 30 | $600.00 |
| Pool modification<br>Raise deep end. Shorten pool length. Build new retaining wall. Tie in to existing pool. Match tile. Reuse current coping. Concrete or trex composite decking where pool was removed. | $5,000.00 | 1 | $5,000.00 |
| Light fixtures | $550.00 | 1 | $550.00 |

| DESCRIPTION | RATE | QTY | AMOUNT |
|---|---|---|---|
| Decking<br>Composite wood decking. | $12.00 | 400 | $4,800.00 |
| Mastic<br>Sanded mastic | $400.00 | 1 | $400.00 |
| | SUBTOTAL | | $17,650.00 |
| | TAX (8.25%) | | $0.00 |
| | TOTAL | | USD $17,650.00 |

15.    Upon information and belief, on or about March 23, 2023, in an apparent effort to gain the customer's confidence and business, Davis provided the customer with Plaintiff's Blue Escapes Domain rather than Defendants' Blue Escape Domain that was listed on the March Estimate—specifically directing the customer to view "info on the [Iovinellis] and all of *our* license and certifications." *See* Exhibit "G" (03.23.2023 Davis Text) (emphasis added). Upon information and belief, despite providing Plaintiff's Blue Escapes Domain, Davis represented to the customer that he was "an independent sales rep/project manager for the company." *See* Id.



16.    Upon information and belief, on or about March 27, 2023, capitalizing on Plaintiff's valuable goodwill and strong reputation, Davis required from this same customer an onerous

payment schedule with a substantial *fifty percent down payment* prior to even starting the job. *See* Exhibit "H" (03.27.2023 Davis Text).



17.     Based on the above experiences with Davis, and after having Plaintiff clarify the situation, this customer submitted a Yelp review which outlined in detail the manner in which Davis went about passing off the Plaintiff's business mark as his own, and in the process creating

confusion as to whom this customer was initially communicating with. *See* Exhibit "I" (Davis Yelp review).

18.     By way of a further example, another customer who was mislead by Defendants into thinking she was dealing with the Plaintiff's business, had contacted Plaintiff about this confusion.  *See* Exhibit "J" (Broadly communications with customer). Again, Plaintiff had to clarify with this customer that they were in no way affiliated with the Defendants.

19.     On June 14, 2023, Blue Escapes sent Davis a cease and desist letter ("1st C&D Letter"). *See* Exhibit "K" (06.14.2023 C&D Letter). The 1st C&D Letter was sent via certified mail to Defendant Blue Escape's mailing address at 190 E. Stacy Rd., Suite 306, Allen, Texas 75002 and via e-mail at blueescapepools@gmail.com. *See* Id. However, Davis did not respond to the 1st C&D Letter.

20.     Further unbeknownst to Blue Escapes, on or about April 18, 2023, Davis provided an estimate to another customer in Wylie, Texas, numbered EST05895 (the "April Estimate"), in the amount of $53,000.00 for a pool construction project of an inground gunite pool. *See* Exhibit "L" (April Estimate). Upon information and belief, Davis brought in a contractor, LG Plumbing ("LG"), to perform certain services for the April Estimate because Defendants lacked such capabilities. *See* Id. *See also* Exhibit "A" (Declaration of Willeta Iovenilli). Defendant Davis represented to the contractor that he was affiliated with Plaintiff's Blue Escapes.  *See* Id.  However, upon information and belief, Defendants issued a fraudulent check payment to LG on July 21, 2023, in the amount of $9,000.00, which was returned by the bank on July 26, 2023, due to insufficient funds. *See* Exhibit "M" (07.21.2023 Hot Check to Contractor). *See also* Exhibit "A" (Declaration of Willeta Iovenilli).  Regarding the name of the payor on the check (which was not

in the name of either Defendant), Davis represented to the contractor that it was "a partner of his". *See* Id.

21.     Defendants' actions were only brought to Blue Escapes attention after the contractor mistakenly contacted Blue Escapes, seeking payment that was owed by Defendants. *See* Id. Consequently, Blue Escapes sent Davis a second cease and desist letter ("2d C&D Letter") on August 23, 2023 and reattached the 1st C&D Letter. *See* Exhibit "N" (08.23.2023 C&D Letter). Davis acknowledged receipt on August 23, 2023. On August, 23, 2023, in response to the 2d C&D Letter, Davis stated his unequivocal intent to "continue and use Blue Escape Pools LLC" and that "the state of Texas recognizes [him] as the owner of Blue Escape Pools. *See* Exhibit "O" (08.23.2023 Davis e-mails). Despite the foregoing, Davis boldly responded to counsel from blueescapepools@gmail.com when he represented that he is "not trying to impersonate or deceive anyone into believing [he has] any association with Blue Escapes Pool and Spa." *See* Id. However, Davis expressed his willingness to sell the name, Blue Escape Pools LLC, but if Plaintiff "have a problem with [Davis] owning the company they can buy it or contact the Secretary of State who approved [Davis] to own the name."  *See* Id. Of course, the Secretary of State does not clear names for trademark use, and corporate name availability has nothing to do with the ability to use a certain name as a trademark beamed out to the public.  Davis clearly knew that he had registered his LLC with a name that the Plaintiff has been using for over a decade – in the same geographic area and for the same pool-related services[1].

22.     As of the date of this filing, Defendants are using a nearly identical domain name as that of Blue Escapes. *See* Exhibit "A" (Declaration of Willeta Iovenilli). As a result, Blue

---

[1] Defendants purport to engage in pool construction and remodeling services in the Dallas area. *See* Exhibit "E" (Defendants' website). Plaintiff also provides similar pool services in the same Dallas area.  *See* Exhibit "C" (Blue Escapes website).

Escapes has already suffered money damages through this redirection of revenue that rightfully belongs to Blue Escapes.  *See Id.*  Blue Escapes currently owns https://blueescapespools.com/ that it created.  *See Id.*  However, https://www.blueescapepool.com/ that Defendants operate under was chosen by Defendants to obtain the benefit of Plaintiff's decades-long efforts to develop valuable goodwill and a strong reputation in the greater Dallas-Fort Worth area for servicing, building, renovating and repairing pools. *See Id.*  This is no coincidence. Defendants knew of Plaintiff's reputation in the Dallas area—even directing consumers to Plaintiff's website and physical address. *See Id.*

23.    The aforementioned actions of Defendants are just the tip of the iceberg, and the snowball effect inherent in this type of misappropriation will cause irreparable damage to Plaintiff's business if Defendants are not immediately restrained from their actions and called upon to redress the wrongs inflicted on Blue Escapes.  *See Id.*

## CLAIMS AND CAUSES OF ACTION

### COUNT I
### Trademark Infringement and False Designation of Origin (15 U.S.C. § 1125(a)(1)(A)

24.    Blue Escapes incorporates by reference the allegations in paragraphs 1 through 23 above.

25.    Defendants' use in commerce of "Blue Escapes" as well as the https://www.blueescapepool.com/ domain name it misappropriated constitutes use of a false designation of origin in interstate commerce, which wrongfully and falsely designates, describes or represents the origin of Defendants' goods and services, and is likely to cause confusion, cause mistake and to deceive as to Defendants' affiliation, connection, or association with Blue Escapes, and/or as to the origin, sponsorship, or approval of Defendants' goods and services by Blue Escapes.

26.     Defendants' actions have been willful and intentional, as evidence by both their pre-cease and desist as well as their post-cease and desist actions and communications.

27.     Defendants' wrongful activities have been and will continue to cause irreparable damage to Blue Escapes, its business reputation and the goodwill associated with its marks unless such activities are enjoined by this Court.

28.     Moreover, Blue Escapes has no adequate remedy at law.

29.     The Court should accordingly determine that Defendants have engaged in trademark infringement by using Plaintiff's mark in commerce.

## COUNT II
## False Advertising (15 U.S.C. § 1125(a)(1)(B)

30.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 29 above.

31.     Defendants' unauthorized sales or attempted sales of services under Plaintiff's mark to unsuspecting consumers constitutes false advertising, which is a violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

32.     Defendants have used a word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact which, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of Defendants' services.

33.     Defendants advertised, marketed, or promoted its services to the public and/or to specific segments of the public, using Plaintiff's mark.

34.     Defendants' conduct has deceived, and is likely to continue to deceive, a material segment of the consumers to whom Defendants have directed their marketing activities. Defendants' false and/or misleading statements are material in that they are likely to influence

consumers to purchase services from Defendants and cause competitive and other commercial injuries to Blue Escapes.

35.     Defendants have made, and continues to make, its false and/or misleading statements with the intent to cause confusion and mistake, or to deceive the public as to the nature, quality, or characteristics of the Defendants' commercial activities.  Blue Escapes has been damaged as a result.

36.     Defendants' actions have been willful and intentional, as evidence by both their pre-cease and desist as well as their post-cease and desist actions and communications.

37.     Defendants' wrongful activities have been and will continue to cause irreparable damage to Blue Escapes, its business reputation and the goodwill associated with its marks unless such activities are enjoined by this Court.

38.     Moreover, Blue Escapes has no adequate remedy at law.

39.     The Court should accordingly determine that Defendants have engaged in trademark infringement by using Plaintiff's marks in commerce.

## COUNT III
## Common Law Trademark Infringement

40.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 39 above.

41.     Defendants' use in commerce of "Blue Escapes" as well as the https://www.blueescapepool.com/ domain name it misappropriated constitutes an infringement of Plaintiff's common law rights in its mark.

42.     Plaintiff's common law rights in its mark is superior to any rights that Defendants may claim in their use of designations.

43.     Defendants have used, and continue to use, Plaintiff's mark in Texas and throughout the United States.

44.     Said use is likely to cause confusion as to the source of Defendants' goods and services in that purchasers and prospective purchasers thereof will likely associate or have associated such goods and services with or as originating from Blue Escapes, all to the detriment of Blue Escapes.

45.     Defendants' actions have been willful and intentional, as evidence by both their pre-cease and desist as well as their post-cease and desist actions and communications.

46.     Defendants' conduct has caused, and continues to cause, irreparable injury to Blue Escapes and, unless enjoined by this Court, will continue both to damage Blue Escapes and to deceive the public.

47.     Moreover, Blue Escapes has no adequate remedy at law.

48.     The Court should accordingly determine that Defendants have engaged in trademark infringement by using Plaintiff's mark in commerce.

## COUNT IV
## Common Law Unfair Competition

49.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 48 above.

50.     Defendants' use in commerce of "Blue Escapes" as well as the https://www.blueescapepool.com/ domain name it misappropriated constitutes unfair competition, as Defendants' actions are contrary to honest practice in industrial or commercial matters.

51.     Defendants' unfair competition is likely to cause confusion as to the source of Defendants' goods and services in that purchasers and prospective purchasers thereof will likely

associate or have associated such goods and services with or as originating from Blue Escapes, all to the detriment of Blue Escapes.

52.     Defendants' actions have been willful and intentional, as evidence by both their pre-cease and desist as well as their post-cease and desist actions and communications.

53.     Defendants' conduct has caused, and continues to cause, irreparable injury to Blue Escapes and, unless enjoined by this Court, will continue both to damage Blue Escapes and to deceive the public.

54.     Moreover, Blue Escapes has no adequate remedy at law.

55.     The Court should accordingly determine that Defendants have engaged in trademark infringement by using Plaintiff's mark in commerce.

## COUNT V
## Common Law Unfair Competition by Misappropriation

56.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 55 above.

57.     Defendants' use in commerce of the mark and domain name it misappropriated constitutes unfair competition by misappropriation in violation of the common law of the State of Texas and elsewhere.

58.     Plaintiff's mark and services were created through Plaintiff's extensive time, labor, skill, and money.

59.     Defendants' use of the mark in their sales and offers for services creates competition with Blue Escapes, thereby conferring Defendants with a special advantage in that competition because Defendants are burdened with little or none of the expense incurred by Blue Escapes.

60.     Defendants' unfair competition by misappropriation is likely to cause confusion as to the source of Defendants' goods and services in that purchasers and prospective purchasers thereof will likely associate or have associated such goods and services with or as originating from Blue Escapes, all to the detriment of Blue Escapes.

61.     Defendants' actions have been willful and intentional, as evidence by both their pre-cease and desist as well as their post-cease and desist actions and communications.

62.     Defendants' conduct has caused, and continues to cause, irreparable injury to Blue Escapes and, unless enjoined by this Court, will continue both to damage Blue Escapes and to deceive the public.

63.     Moreover, Blue Escapes has no adequate remedy at law.

64.     The Court should accordingly determine that Defendants have engaged in trademark infringement by using Plaintiff's mark in commerce.

## COUNT VI
## Federal Cybersquatting (15 U.S.C. § 1125(d))

65.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 64 above.

66.     Defendants' conduct, as set forth fully above, constitutes "cybersquatting" under the Anti-Cybersquatting Consumer Protection Act.

67.     Defendants used, registered, and/or trafficked in a domain name belonging to Blue Escapes with a bad faith intent to profit from Plaintiff's mark.

68.     Plaintiff's mark was distinctive at the time of its use, and the Defendants' use of same is confusingly similar to the Plaintiff's mark.  Further, Defendants' actions have been willful and intentional, as evidence by both their pre-cease and desist as well as their post-cease and desist actions and communications.

69.     Defendants' wrongful activities have caused irreparable damage to Blue Escapes and will continue to do so unless such activities are enjoined by this Court.

70.     Moreover, Blue Escapes has no adequate remedy at law.

71.     The Court should accordingly determine that Defendants have engaged in cybersquatting by using Plaintiff's domain name.

## COUNT VII
## Unfair Competition under Section 17.46(a) of the Texas Business and Commerce Code

72.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 71 above.

73.     Defendants have used, and are continuing to use, Plaintiff's mark and domain name in commerce in Texas.

74.     Defendants' actions set forth above constitute false, misleading, or deceptive acts or practices including, but not limited to, (1) passing off Defendants' goods or services as those of Plaintiff's; (2) causing confusion or misunderstanding as to the source of its goods and services, sponsorship, approval, or certification of its goods or services; and/or (3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, Blue Escapes.

75.     Defendants' actions have been willful and intentional, as evidence by both their pre-cease and desist as well as their post-cease and desist actions and communications.

76.     Defendants' wrongful activities have been and will continue to cause irreparable damage to Blue Escapes, its business reputation and the goodwill associated with its mark unless such activities are enjoined by this Court.

77.     Moreover, Blue Escapes has no adequate remedy at law.

78.     The Court should accordingly determine that Defendants have engaged in unfair competition by using Plaintiff's mark in commerce.

## COUNT VIII
### Tortious Interference with Existing Contracts

79.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 78 above.

80.     Blue Escapes has established business relationships with various customers, of which Defendants were acutely aware by virtue of contacting and engaging Plaintiff's contractors.

81.     On information and belief, Defendants willfully and intentionally interfered with existing business relationships with both Plaintiff's contractors and customers.

82.     Defendants' interference with these business relationships proximately caused injury to Blue Escapes, which is comprised of actual economic damages in the form of lost benefits of the bargain, lost profits, as well as Defendants' profits.

83.     Defendants' actions have been willful and intentional, as evidence by both their pre-cease and desist as well as their post-cease and desist actions and communications.

84.     Defendants' wrongful activities have been and will continue to cause irreparable damage to Blue Escapes.

85.     Moreover, Blue Escapes has no adequate remedy at law.

86.     Because Defendants' tortious interference was intentional and malicious, Blue Escapes is entitled to exemplary and actual damages.

## COUNT IX
### Tortious Interference with Prospective Business Relations

87.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 86 above.

88.     There was a reasonable probability that Blue Escapes would have entered into certain business relationships with third parties.

89.     Defendants' intentionally interfered with these relationships, and this interference was independently tortious or unlawful.

90.     Defendants' interference with these business relationships proximately caused injury to Blue Escapes, which is comprised of actual economic damages in the form of lost benefits of the bargain, lost profits, as well as Defendants' profits.

91.     Defendants' actions have been willful and intentional, as evidence by both their pre-cease and desist as well as their post-cease and desist actions and communications.

92.     Defendants' wrongful activities have been and will continue to cause irreparable damage to Blue Escapes.

93.     Moreover, Blue Escapes has no adequate remedy at law.

94.     Because Defendants' tortious interference was intentional and malicious, Blue Escapes is entitled to exemplary and actual damages.

## COUNT X
## Unjust Enrichment

95.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 94 above.

96.     By providing services under Plaintiff's valuable trademark, Defendants have been unjustly enriched to Plaintiff's detriment in violation of the common law of the State of Texas and elsewhere.

97.     Under principles of equity, Blue Escapes is entitled to damages, restitution, and/or disgorgement of Defendants' ill-gotten gains.

98.     Plaintiff is entitled to, among other things, an order enjoining and restraining Defendants from using Plaintiff's mark, as well as to Defendants' profits, Plaintiff's reasonable attorney's fees and any other remedies provided for under law.

**COUNT XI**
**Application for Temporary Restraining Order**

99.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 98 above.

100.    Blue Escapes likely will suffer imminent harm and irreparable injury if Defendants are not immediately restrained from using Plaintiff's trademarks, and domain name.  Fed. R. Civ. P. 65(b)(1).  *See* Exhibit "A" (Declaration of Willeta Iovenilli).

101.    There is no dispute that Defendants intend to engage in the very activity that Plaintiff seeks to enjoin. Specifically, Defendants are currently using a nearly identical domain name to that of the Plaintiff.  *See* Id.  Further, the web content associated with this misappropriated domain utilizes the Plaintiff's mark and offers substantially similar services as that offered by Plaintiff.  *See* Id. Therefore, there is no conjecture involved in satisfying the imminent harm requirement.

102.    An irreparable injury is one that cannot be prevented or fully rectified by a final judgment following a trial.  *See Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. 1981) (irreparable injury is harm that cannot be undone by an award of monetary damages). At this time, Plaintiff's damages are not ascertainable or easily calculated.  *See* Id. Defendants currently operate, and have communicated their intention to continue operating, Defendants' Blue Escape Domain and associated content which infringes on Plaintiff's mark, and are utilizing this domain and associated web content on a daily basis that can have a devastating effect on Plaintiff's business. *See* Id.  This damage includes not only lost profits, but also lost

goodwill and reputation. *See* Id. Damage to goodwill and reputation are precisely the type of damages that cannot be quantified by a mere dollar figure. *See* Id.  Therefore, there is no adequate remedy at law because a money judgment would come well after the aforementioned damage has been done. *See* Id.

103.    There is a substantial likelihood that Plaintiff will prevail on the merits because the Defendants' actions are documented, and the actionable behavior can be traced with minimal effort.  *See Bluefield Water Ass'n v. City of Starkville,* 577 F.3d 250-252-53 (5th Cir. 2009).  It is not necessary for the applicant to prove it will ultimately prevail. *Walling v. Metcalfe,* 863 S.W.2d 56, 57 (Tex. 1993).

104.    The threatened harm to Plaintiff outweighs the harm that a temporary restraining order would inflict on Defendants.  *Opulent Life Church v. City of Holly Springs,* 697 F.3d 279, 297 (5th Cir. 2012).  *See* Id. A balancing of hardships reveals that it is the Plaintiff who will ultimately suffer if Defendants are permitted to continue their damaging efforts. *See* Id. Any harm resulting to Defendants would be the prevention of unjust enrichment through their unlawful actions. *See* Id.   Given Plaintiff's likelihood of success on its claims, the threatened harm to Plaintiff outweighs the harm that would befall the Defendants.  *See* Id.

105.    Issuing a temporary restraining order would not adversely affect the public interest and public policy.  *Mississippi Power & Light Co., et al v. United Gas Pipe Line Co,* 760 F.2d 618, 623 (5th Cir. 1985).  Should this Court grant the injunctive relief requested, it would affect only the parties to this lawsuit. *See* Id.  To the extent that the prospective customer is an affected nonparty, the customer is isolated in the marketplace and does not represent the public interest as a whole. *See* Id.  For the same reason, enjoining Defendants' actions does not run counter to public policy.  *See* Id.

106.    Plaintiff is willing to post bond in an amount the Court deems appropriate. *See* Id.

107.    Plaintiff also asks the Court to set the request for a preliminary injunction for hearing at the earliest possible date.

108.    For these reasons, Plaintiff asks the Court to issue a temporary restraining order preventing Defendants from (a) directly or indirectly using, in whole or in part, or in any form, Plaintiff's mark, or any other mark, word or name similar to Plaintiff's mark likely to cause confusion, mistake or to deceive, including any domain name incorporating Plaintiff's mark or a confusingly similar name; (b) making any false or misleading designation or representation of origin, any false advertisement, and/or engaging in any unfair methods of competition and/or unfair and/or deceptive acts or practices that may or are likely to cause the actual or potential customers of Blue Escapes and/or Defendants and/or the public in general to believe that Defendants, and/or their products, services or business, are in any way associated, affiliated, or connected with, or sponsored by, Blue Escapes, or otherwise falsely designating or representing the source, origin, sponsorship, connection, or affiliation of Defendants, and/or Defendants' activities or business of Defendants, *vis-à-vis* Blue Escapes; (c) unfairly competing with Blue Escapes; and (d) contacting any customers that Defendants know to be preexisting customers of the Plaintiff.

## COUNT XII
## Application for Preliminary Injunction

109.    Blue Escapes incorporates by reference the allegations in paragraphs 1 through 108 above.

110.    Plaintiff asks the Court to set its application for preliminary injunction for a hearing and, after the hearing, issue a preliminary injunction against Defendants for the reasons articulated in this Complaint.

## COUNT XIII
### Request for Permanent Injunction

111.     Blue Escapes incorporates by reference the allegations in paragraphs 1 through 110 above.

112.     Blue Escapes asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendants.

### DEMAND FOR JURY TRIAL

113.     Blue Escapes demands a trial by jury of all triable claims.

### RELIEF REQUESTED

**WHEREFORE**, Blue Escapes respectfully requests that:

(1)     The Court find and enter Judgment against Defendants on each of Plaintiff's Claims for Relief, Counts I through XIII.

(2)     The Court enjoin and restrain Defendants, their officers, directors, agents, servants, employees, attorneys, affiliates, successors, assigns, and all persons acting for, with, by, through or under them, from:

(a)     directly or indirectly using, in whole or in part, or in any form, Plaintiff's mark, or any other mark, word or name similar to Plaintiff's mark likely to cause confusion, mistake or to deceive, including any domain name incorporating Plaintiff's mark or a confusingly similar name;

(b)     making any false or misleading designation or representation of origin, any false advertisement, and/or engaging in any unfair methods of competition and/or unfair and/or deceptive acts or practices that may or are likely to cause the actual or potential customers of Blue Escapes and/or Defendants

and/or the public in general to believe that Defendants, and/or their products, services or business, are in any way associated, affiliated, or connected with, or sponsored by, Blue Escapes, or otherwise falsely designating or representing the source, origin, sponsorship, connection, or affiliation of Defendants, and/or Defendants' activities or business of Defendants, *vis-à-vis* Blue Escapes;

(c)     unfairly competing with Blue Escapes; and

(d)     contacting any customers that Defendants know to be preexisting customers of the Plaintiff.

(3)     The Court require Defendants to account for and pay over to Blue Escapes all gains, profits and advantages derived by them from the activities complained of herein.

(4)     The Court award Blue Escapes its actual damages caused by Defendants' acts complained of herein.

(5)     The Court award Blue Escapes treble the amount of actual damages suffered by Blue Escapes.

(6)     The Court award Blue Escapes compensatory damages in an amount to be proven at trial, for which Defendants shall be liable.

(7)     The Court award Blue Escapes statutory damages, should same be elected pursuant to the Lanham Act, in an amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

(8)     The Court award Blue Escapes its costs in this civil action.

(9)     The Court award Blue Escapes its reasonable attorneys' fees.

(10)    The Court Order that Defendants transfer to Blue Escapes the domain names at issue.

(11)    The Court award such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

/s/ Andy Nikolopoulos
Andy Nikolopoulos, Esq.
Texas Bar No. 24044852
anikolopoulos@foxrothschild.com
John Guerrero (*Admission Forthcoming*)
Texas Bar No. 24133040
jguerrero@foxrothschild.com
**FOX ROTHSCHILD LLP**
2501 N. Harwood St., Suite 1800
Dallas, TX 75201
(t) 972.991.0889
(f) 972.404.0516

*Attorneys for Plaintiff BEPS Services, LLC*
*d/b/a Blue Escapes Pool & Spa*