UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BEPS SERVICES, LLC D/B/A BLUE ESCAPES POOL & SPA | § § § | |
| v. | § § | CIVIL NO. 4:23-CV-975-SDJ |
| BLUE ESCAPE POOLS, LLC, ET AL. | § § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff's Motion for Entry of Default and for Default Judgment and Brief in Support (the "Motion"). (Dkt. #16). After full consideration, the Court finds that the Motion should be **GRANTED**.

### I. BACKGROUND

This is a trademark infringement dispute. BEPS Services, LLC d/b/a Blue Escapes Pool & Spa ("BEPS") is a pool services company that has done business in the greater Dallas-Fort Worth area under the name "Blue Escapes Pool & Spa" since 2011. (Dkt. #1 ¶¶ 10–11). BEPS maintains a website at the domain "blueescapespools.com." (Dkt. #1 ¶ 11).  In 2023, Defendant Roger Davis formed Defendant Blue Escape Pools LLC (collectively, "Defendants").  (Dkt. #1 ¶ 12). Davis subsequently registered the domain, "blueescapepool.com." (Dkt. #1 ¶ 13).

Defendants, shortly thereafter, began contacting potential customers for pool services. Defendants provided one such customer an estimate which listed among Defendants' contact information their website URL and BEPS's business address. (Dkt. #1 ¶ 14). Defendants later provided that customer with BEPS's website URL,

claiming that Davis was "an independent sales rep/project manager for [BEPS]." (Dkt. #1 ¶ 15). Defendants interacted with another customer who, confusing BEPS for Defendants, later contacted BEPS about a job left unfinished by Defendants. (Dkt. #1-11). Defendants engaged a different customer for a pool construction project and hired a contractor to perform the services. (Dkt. #1 ¶ 20). Defendants represented to the contractor that Davis was affiliated with BEPS and paid the contractor with a fraudulent check. (Dkt. #1 ¶ 20).

After discovering Defendants' conduct, BEPS sent Defendants two cease-and-desist letters. (Dkt. #1 ¶ 19–21). Davis responded to BEPS by email explaining that if BEPS "ha[s] a problem with [Davis] owning the company they can buy it or contact the Secretary of State who approved [Davis] to own the name." (Dkt. #1 ¶ 21).

BEPS then filed suit against Defendants for (1) trademark infringement under 15 U.S.C. § 1125(a)(1)(A) (Lanham Act § 43(a)(1)(A)), (2) false advertising under 15 U.S.C. § 1125(a)(1)(B) (Lanham Act § 43(a)(1)(B)), (3) cybersquatting under 15 U.S.C. § 1125(d) (Lanham Act § 43(d)), and (4) related causes of action under Texas state law. (Dkt. #1 ¶¶ 24–112). Defendants were timely served and have failed to respond for over six months. (Dkt. #11, #12). BEPS filed for, and the clerk's office entered, default as to both Defendants. (Dkt. #16, #17). BEPS now moves for default judgment on its claims.[1] (Dkt. #16). BEPS requests statutory damages, costs and attorney's

---

[1] While BEPS's Complaint asserts causes of action under Texas common law and the Texas Business and Commercial Code, the Motion only seeks relief authorized by the Lanham Act. Consequently, this order awards relief only as to BEPS's causes of action for violations of 15 U.S.C. § 1125.

fees, a permanent injunction, and an order that Defendants transfer the offending domain to BEPS and terminate Defendant Blue Escape Pools LLC. (Dkt. #16).

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth the conditions upon which default may be entered against a party and the procedure to seek entry of a default judgment. *See* FED. R. CIV. P. 55. Securing a default judgment involves a three-step procedure: (1) the defendant's default; (2) the entry of default; and (3) the entry of default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A "default" occurs when the defendant does not plead or otherwise respond to the complaint. *Id.* An "entry of default" is the notation the clerk makes after the default is established by affidavit. *Id.* The plaintiff may then apply for a judgment by the court based on this default—a "default judgment." *Id.*

Entry of default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Still, "[c]ourts in the Fifth Circuit utilize a three-part analysis" to determine whether a default judgment is appropriate: "1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing *Lindsey*, 161 F.3d at 893). By defaulting, the defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu Constr. Co. v. Hous.*

3

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Ohio Cent. R.R. Co. v. Ctr. Tr. Co.*, 133 U.S. 83, 10 S.Ct. 235, 33 L.Ed. 561 (1890)). On the other hand, "a defendant's default does not concede the truth of allegations of the complaint concerning damages." *Graham*, 2017 WL 2600318, at *1 (citation omitted).

### III. Discussion

Because Defendants have not answered or otherwise appeared, and because BEPS has obtained an entry of default against Defendants, (Dkt. #17), the first two requirements for a default judgment have been met. The only remaining issue is whether a default judgment should be entered. *N.Y. Life Ins.*, 84 F.3d at 141. For the reasons below, the Court finds that default judgment is warranted.

### A. Default Judgment Is Procedurally Warranted.

Before granting a default judgment, "[t]he Court must first determine whether a default judgment is procedurally warranted," which involves six factors:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F.Supp.3d 772, 780 (E.D. Tex. 2023).

In weighing the six factors above, the Court finds that they weigh in favor of finding that default judgment is procedurally warranted against Defendants.

First, there are no issues of material fact. Indeed, when a defendant defaults, it "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."

4

*Nishimatsu*, 515 F.2d at 1206. Here, Defendants failed to answer the complaint or otherwise appear. As a result, Defendants have admitted BEPS's well-pleaded factual allegations.

Second, Defendants' failure to appear has resulted in substantial prejudice to BEPS. When a defendant fails to respond to a lawsuit, the adversarial process is brought to a halt, resulting in prejudice to the plaintiff's interests. *Ins. Co. of the West v. H&G Contractors, Inc.*, No. C–10–390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011). Here, BEPS has already been prejudiced by the eighteen-month delay caused by Defendants' failure to answer the complaint, and BEPS will be further prejudiced absent a default judgment.

Third, the grounds for default judgment are clearly established. When a defendant fails to respond "to the summons and complaint, the entry of default, or the motion for default," then grounds for default are clearly established. *Graham*, 2017 WL 2600318, at *2 (citation omitted); *see also* FED. R. CIV. P. 55(a). As described herein, Defendants were served in accordance with the Federal Rules. (Dkt. #11, #12). Defendants were then required to serve an answer or otherwise respond. As of the date of this order, they have not. Thus, the court finds that the grounds for default against Defendants are clearly established.

Fourth, the record reflects that Defendants did not default due to excusable neglect or a good-faith mistake. Again, Defendants were properly served. (Dkt. #11, #12). Defendants neither responded nor offered evidence to show that their failure to

5

respond was due to a "good faith mistake or excusable neglect[.]" *Lindsey*, 161 F.3d at 893.

Fifth, the Defendants' failure to file any responsive pleading or motion mitigates the harshness of a default judgment. *Am. Heritage Life Ins. Co. v. Mitchell*, No. 6:15-CV-95, 2016 WL 3883029, at *3 (E.D. Tex. May 24, 2016), *report and recommendation adopted*, 2016 WL 3855257 (E.D. Tex. July 15, 2016). BEPS followed the necessary procedural steps to obtain an entry of default. Because Defendants could have responded during this litigation and chose not to, a default judgment is not unduly harsh.

Sixth, nothing in the record suggests that BEPS has contributed to the delay of this action or otherwise gives the court any reason to set aside the clerk's entry of default. In sum, BEPS has met the procedural requirements for default judgment.

## B. There is a Sufficient Basis for Default Judgment.

After establishing that default judgment is procedurally warranted, the court must determine whether there is a sufficient basis for judgment. *Nishimatsu*, 515 F.2d at 1206. Although Defendants have now functionally admitted the allegations set forth in the Complaint, the Court must review the pleadings to determine whether the Complaint presents a sufficient basis for relief. *Id.*

The Fifth Circuit "draw[s] meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citation omitted). "Rule 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing that

the pleader is entitled to relief." *Id.* (quotations omitted). Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (footnote and citations omitted)). This "low threshold" pleading standard "is less rigorous than that under Rule 12(b)(6)." *Cunningham v. Crosby Billing Servs., Corp.*, No. 4:18-CV-43, 2018 WL 6424792, at *4 (E.D. Tex. Oct. 14, 2018) (citation omitted). Only well-pleaded facts, not conclusions of law, are presumed true. *Nishimatsu*, 515 F.2d at 1206.

After reviewing BEPS's pleadings and all the evidence before it, the Court finds that BEPS has sufficiently pleaded claims for Trademark Infringement and False Designation of Origin, False Advertising, and Cybersquatting to warrant the entry of default judgment against Defendants for violation of 15 U.S.C. §§ 1125(a)(1)(A), 1125(a)(1)(B), and 1125(d)(1).

### 1. Trademark Infringement and False Designation of Origin

BEPS has proven that Defendants are liable for trademark infringement and false designation of origin under the Lanham Act. Section 1125(a)(1)(A) provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as

7

to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

To prevail on a claim for trademark infringement and false designation of origin under the Lanham Act, a plaintiff must prove "(1) The defendant made a false or misleading statement of fact about its product or service; (2) The statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) The deception was material, in that it was likely to influence consumers' purchasing decisions; (4) The product or service is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue." *BVE Brands, LLC v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, No. 1-22-CV-278, 2023 WL 5108960, at *3 (W.D.Tex., 2023) (*quoting Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)).

BEPS has proven that Defendants violated Section 1125(a)(1)(A). First, Defendants clearly made false and misleading statements about their service based on their deceptive usage of BEPS's contact information. (Dkt. #1 ¶¶ 14–15). Defendants also falsely represented to multiple individuals that they are affiliated with BEPS. (Dkt. #1 ¶¶ 14–21). Second, Defendants' use of the "blueescapepool.com" domain name and false representations have already deceived several potential BEPS customers and will likely deceive many more if left unchecked. (Dkt. #1 ¶¶ 14–21). Third, Defendants' deception was material as it is likely to influence customers' purchasing decisions. Indeed, multiple potential customers have already engaged

8

Defendants for work under the false impression that Defendants are affiliated with BEPS. (Dkt. #15 ¶ 20). Fourth, BEPS presented evidence that Defendants have operated a website under the "blueescapepool.com" domain name in interstate commerce. (Dkt. #1 ¶¶ 13, 25). Finally, BEPS has proven that it will suffer injury to its business if Defendants' conduct remains unchecked. (Dkt. #1 ¶ 23).

### 2. False Advertising

BEPS has also proven that Defendants are liable for false advertising under the Lanham Act. Section 1125(a)(1)(B) provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

When considering a claim for false advertising under the Lanham Act, courts in this circuit apply the same test used when considering claims for false designation of origin. *Pizza Hut, Inc.*, 227 F.3d at 495. As explained above, *see supra* Part III.B.1, BEPS has proven each element of this test. Therefore, BEPS has proven that Defendants violated Section 1125(a)(1)(B).

### 3. Cyberpiracy

BEPS has also proven that Defendants committed cyberpiracy in violation of Section 1125(d)(1) by "cybersquatting" on the "blueescapepool.com" domain. Section 1125(d)(1)(A) provides that:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that—
>
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>
> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).

Therefore, to prevail on this cause of action, a plaintiff must show that "(1) its mark is a distinctive or famous mark entitled to protection; (2) [defendants'] domain names are identical or confusingly similar to [plaintiff]'s mark'; and (3) [defendants'] registered the domain names with the bad faith intent to profit from them." *Tex. Int'l Prop. Assocs. v. Hoerbiger Holding AG*, 624 F.Supp.2d 582, 587 (N.D. Tex. 2009) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)) (citation modified) (internal quotation marks omitted)).

Turning to the first element, BEPS's "Blue Escapes" mark is distinctive. There are five categories of marks, each increasing in distinctiveness: "(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* While "blue" is undoubtedly a descriptive word because it "provides an attribute or quality of a good," *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009), "Blue Escapes" is suggestive. "Blue Escapes" does not literally "provide an attribute or quality of a good," rather it is evocative of the relaxing, comforting, or other qualities characteristic of an "escape" which might flow from BEPS's pool services. The mark is therefore suggestive because "it requires the consumer to exercise his imagination to apply the trademark to the good." *Id.*

Under the second element, Defendants' domain name is clearly similar to BEPS's mark. "To determine whether a domain name is identical or confusingly similar to a trademark, the court must make a 'direct comparison between the protected mark and the domain name itself,' rather than an assessment of the context in which each is used or the content of the offending web site." *Bear Stearns Cos. v. Lavalle*, No. CIV.A.3:00-CV-1900-D, 2000 WL 34339773, at *7 (N.D. Tex. Oct. 27, 2003) (quoting *N. Light Tech., Inc. v. N. Lights Club*, 97 F.Supp.2d 96, 117 (D. Mass. 2000)). Defendants' "blueescapepool.com" domain is nearly identical to BEPS's "Blue Escapes" mark. In fact, the record shows that, in at least one instance, Defendants

intentionally, with the intent to confuse a customer, provided the customer with Plaintiff's Blue Escapes Domain rather than Defendants' Blue Escape Domain. (Dkt. #1 ¶ 15); (Dkt. #1-8). Given that Defendants' domain is nearly identical to BEPS's mark, it easily passes the statutory test. *See N. Light*, 97 F.Supp.2d at 118 (finding "Northern Light" and "northernlights.com" confusingly similar).

Concerning the last element, the Court finds that Defendants registered the domain with the bad faith intent to profit from it. Under Section 1125(d)(1), to determine bad faith a court may consider factors such as, but not limited to:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;

> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the

person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

The first four factors refer to accidental or innocent conduct that may technically infringe upon a mark. *Bear Stearns Cos.*, 2000 WL 34339773, at \*6. Based on the complaint, Defendants' conduct was neither accidental nor innocent. The domain name does not appear to contain any intellectual property of Defendants or Defendant Roger Davis's name. Defendants did not offer any bona fide goods or services—the only evidence of services that Defendants "provided" was evidence of services through a contractor whom Defendants defrauded or which resulted in a "green" pool—and Defendants' use of BEPS's mark was purely commercial. (Dkt. #1 ¶¶ 18, 20); (Dkt. #1-11). None of these factors weigh in Defendants' favor.

Addressing the remaining factors, Defendants clearly intended to masquerade as BEPS based on their deceptive usage of BEPS's contact information and failure to accurately maintain their own. (Dkt. #1 ¶¶ 14–15). Defendants offered to sell the domain to BEPS, without having used or intended to use it legitimately. (Dkt. #1 ¶ 21). Defendants did not register multiple domain names similar to BEPS's domain,

but BEPS's mark is inherently distinctive as set forth above. Given that only one statutory factor weighs in Defendants' favor while the others weigh against, the Court finds that Defendants registered the "blueescapepool.com" domain with the bad faith intent to profit from it.

Accordingly, the Court finds that Defendants violated 15 U.S.C. § 1125(d)(1) by committing cyberpiracy against BEPS.

## C. Remedies

BEPS requests statutory damages, a permanent injunction, an order that Defendants transfer the "blueescapepool.com" domain to BEPS, and an order that Defendants terminate Defendant Blue Escape Pools LLC.[2] Because BEPS seeks statutory damages, a hearing is unnecessary here. *Rolex Watch, U.S.A., Inc. v. Brown*, No. 1-CV-9155, 2002 WL 1226863, at *2 (S.D.N.Y. 2002) (finding that where "the issue is statutory damages," the court can hold an inquest into damages "on a paper record" rather than through an in-person court hearing). For the following reasons, the Court finds that BEPS is entitled to all the requested relief except the order to terminate Defendant Blue Escape Pools LLC.

### 1. Statutory Damages

BEPS elects to recover statutory damages for trademark infringement under 15 U.S.C. § 1117(d). (Dkt. #16 at 12–13). It requests that the Court award the

---

[2] BEPS also seeks to recover its attorney's fees and costs. These remedies may be requested following the entry of judgment.

statutory maximum of $100,000. (Dkt. #16 at 12–13). The Court has broad discretion in applying Section 1117(d). *Spectrum Ass'n Mgmt. of Tex., LLC v. Lifetime HOA Mgmt. LLC*, 5 F.4th 560, 566 (5th Cir. 2021) (citation omitted). For the following reasons, the Court awards BEPS the maximum statutory damages, $100,000, against Defendants.

Defendants' conduct supports a maximum award. In determining the appropriate amount of damages under Section 1117(d), the following facts sufficiently support a maximum award: the parties competed to provide pool services, (Dkt. #1 ¶¶ 10, 20–21), Defendants exhibited a bad faith intent to divert BEPS's potential customers to their website, (Dkt. #1 ¶ 15); (Dkt. #1-8), and Defendants refused to stop their infringing actions or to transfer their domain. *Kiva Kitchen & Bath Inc. v. Cap. Distrib. Inc.*, 319 F.App'x 316, 320–21 (5th Cir. 2009); *see also Spectrum*, 5 F.4th at 566. This award is further proper as restitution for BEPS's lost profits, reparation for injury to BEPS's reputation, and deterrence of future wrongful behavior. *Spectrum*, 5 F.4th at 566 (citing *Kiva*, 319 F.App'x at 320–21); *see also* (Dkt. #1 ¶¶ 14–22).

### 2. Permanent Injunction

BEPS also requests that the Court enter a permanent injunction enjoining Defendants from:

> (a) directly or indirectly using, in whole or in part, or in any form, Plaintiff's mark, or any other mark, word or name similar to Plaintiff's mark likely to cause confusion, mistake or to deceive, including any domain name incorporating Plaintiff's mark or a confusingly similar name; (b) making any false or misleading designation or representation of origin, any false advertisement, and/or engaging in any unfair methods of competition and/or unfair and/or deceptive acts or practices

that may or are likely to cause the actual or potential customers of Blue Escapes and/or Defendants and/or the public in general to believe that Defendants, and/or their products, services or business, are in any way associated, affiliated, or connected with, or sponsored by, Blue Escapes, or otherwise falsely designating or representing the source, origin, sponsorship, connection, or affiliation of Defendants, and/or Defendants' activities or business of Defendants, vis-à-vis Blue Escapes; (c) unfairly competing with Blue Escapes; (d) contacting any customers that Defendants know to be preexisting customers of the Plaintiff; (e) engaging in any other activity constituting an infringement of any of Plaintiff's mark; and (f) assisting, aiding, or abetting any other person or business entity in engaging in any activity constituting an infringement of any of Plaintiff's mark.

(Dkt. #16 at 13–14).

The party seeking a permanent injunction must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006); *see also Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 478 n.39 (5th Cir. 2020) (explaining that a plaintiff must satisfy "the traditional four-factor test" before "permanent injunctive relief can be awarded"). Deciding whether to grant or deny permanent injunctive relief falls within the district court's discretion. *eBay*, 547 U.S. at 391.

All four factors weigh in favor of granting a permanent injunction against Defendants. BEPS has shown that it suffered an irreparable injury by proving that Defendants, in bad faith, registered and used a domain confusingly similar to BEPS's.

16

Monetary damages are insufficient because there is a possibility of harm to BEPS's reputation, which constitutes irreparable harm for the purposes of a permanent injunction. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding that potential damage to reputation was sufficient for irreparable harm). The balance of hardships weighs in BEPS's favor because Defendants have not responded in this case although they were properly served. Finally, the public interest factor weighs in favor of an injunction because the public interest favors a robust system with adequate protections necessary to identify the source of goods and services. Allowing Defendants to continue their behavior would flout this system. Accordingly, a permanent injunction is warranted.

### 3. Orders to Transfer Domain and to Terminate Defendant Blue Escape Pools LLC

BEPS has also asked the Court to order Defendants to transfer the "blueescapepool.com" domain to BEPS and to terminate Blue Escape Pools LLC. An order to transfer the domain is plainly authorized by 15 U.S.C. § 1125(d)(1)(C). For all of the reasons above, the Court finds that the same is warranted and should be granted. On the other hand, because BEPS does not provide citations to any authority which supports the requested order to terminate, the Court denies that request.

Section 1116(a) provides that the Court "shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of . . . subsection (a), (c), or (d) of section 1125 of this title." In the absence of sufficient briefing to the contrary, the Court finds that a permanent prohibitory injunction is sufficient to prevent further violation of

Section 1125(d). The mere existence of Defendant Blue Escape Pools LLC is not cyberpiracy within the meaning of Section 1125(d). Thus, termination of Blue Escape Pools LLC is not reasonable to prevent the same.

### 4. Attorney's Fees and Costs

Finally, BEPS has requested attorney's fees in the amount of $4,767 and costs of $548 under 15 U.S.C. § 1117(a). Section 1117(a) establishes that, when Section 1125(d) has been violated, a plaintiff is entitled to costs and, in exceptional cases, attorney's fees. As to attorney's fees, BEPS should seek such fees by separate motion under Federal Rule of Civil Procedure 54 following entry of final judgment in this case.

As to costs, the Lanham Act states that a successful plaintiff "shall be entitled" to recover both actual damages and "the costs of the action." 15 U.S.C. § 1117(a). The phrase "the costs of the action" is not defined, but courts have generally interpreted recoverable costs to be limited to those costs enumerated in 28 U.S.C. § 1920. *See, e.g.*, *Roor Int'l BV v. AKS1 Enter., Inc.*, No. H-18-3835, 2019 WL 3500911, at *4 (S.D. Tex. Aug. 1, 2019). The Court will permit BEPS to submit a bill of costs no later than thirty days after entry of judgment, if it desires to do so, in accordance with 28 U.S.C. § 1920.

## IV. Conclusion

It is therefore ordered and decreed that Plaintiff BEPS Services LLC's Motion for Default Judgment, (Dkt. #16), is **GRANTED**. In particular, the Court holds as follows:

- BEPS has shown that it is entitled to a default judgment against Defendants. Defendants have violated 15 U.S.C. §§ 1125(a)(1)(A), 1125(a)(1)(B), and 1125(d)(1).

- The Court awards BEPS $100,000 in statutory damages.

- The Court enters a permanent injunction enjoining Defendants from:

    a. directly or indirectly using, in whole or in part, or in any form, BEPS's mark, or any other mark, word or name similar to BEPS's mark likely to cause confusion, mistake, or to deceive, including any domain name incorporating BEPS's mark or a confusingly similar name;

    b. making any false or misleading designation or representation of origin, any false advertisement, and/or engaging in any unfair methods of competition and/or unfair and/or deceptive acts or practices that may or are likely to cause the actual or potential customers of BEPS and/or Defendants and/or the public in general to believe that Defendants, and/or their products, services or business, are in any way associated, affiliated, or connected with, or sponsored by, BEPS, or otherwise falsely designating or representing the source, origin, sponsorship, connection, or affiliation of Defendants, and/or Defendants' activities or business of Defendants, vis-à-vis BEPS;

    c. contacting any customers that Defendants know to be preexisting customers of BEPS;

    d. engaging in any other activity constituting an infringement of any of BEPS's mark; and

    e. assisting, aiding, or abetting any other person or business entity in engaging in any activity constituting an infringement of any of BEPS's mark.

- The Court orders Defendants to transfer the "blueescapepool.com" domain to BEPS.

BEPS should seek its attorney's fees by separate motion under Federal Rule of Civil Procedure 54 following entry of final judgment. BEPS may also submit a bill of costs no later than thirty days after entry of judgment, if it desires to do so, in accordance with 28 U.S.C. § 1920.

So **ORDERED** and **SIGNED** this 23rd day of September, 2025.

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE